UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANDREA F., | |
| Plaintiff, | Case No. C24-5622-MLP |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing the medical opinion evidence, her testimony, and the lay evidence and that the residual functional capacity ("RFC") determination and step-five findings are thus erroneous. (Dkt. # 15.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 20.) Plaintiff filed a reply. (Dkt. # 21.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1979, has completed one year of college, and has worked as an administrative assistant, administrative clerk, receptionist, and mail clerk. AR at 38, 284. Plaintiff was last gainfully employed in December 2018. *Id.* at 22.

On January 13, 2021, Plaintiff applied for benefits, alleging disability as of December 26, 2018. AR at 19. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* Following hearings held on June 2, 2022, October 20, 2022, and May 17, 2023, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 19-40.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, Plaintiff had the severe impairments of fibromyalgia, obesity, asthma, major depressive disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), insomnia, and post-traumatic stress disorder ("PTSD"). AR at 22. She retained the RFC to perform light work, with certain limitations: she could occasionally climb, stoop, kneel, crouch, crawl, and balance on uneven surfaces; she could have limited exposure to extreme temperatures, weather, and concentrated airborne irritants, as well as hazards like machinery with moving parts, commercial vehicles, and unprotected heights; and she could perform simple, routine, and repetitive tasks in a low-stress work environment involving infrequent decision-making, minimal changes in the work setting, and limited interaction with the public and coworkers. *Id.* at 28. With this RFC, she could perform past relevant work as a mail clerk, and as such, was not disabled. *Id.* at 38.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-4. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 7.)

---

[2] 20 C.F.R. § 404.1520.

ORDER - 2

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021), *superseded by statute on other grounds*. The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### IV. DISCUSSION

**A.    The ALJ Did Not Err in Evaluating Medical Evidence**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 404.1520c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

                    *1.*      *Brandy Thomas, D.O.*

Plaintiff contends the ALJ erred in rejecting Dr. Thomas's opinion by not acknowledging the fluctuating nature of fibromyalgia symptoms, disregarding Dr. Thomas's narrative support, and relying on unsupported conclusory statements. (Dkt. # 15 at 5-6.)

In July 2022, Dr. Thomas opined that Plaintiff was capable of less than sedentary work and required accommodations such as unscheduled breaks, postural limits, low-stress work, and an absenteeism limit. AR at 1475-82. The ALJ noted that Dr. Thomas's opinion relied on Plaintiff's self-reports and that the longitudinal record did not corroborate disabling limitations. *Id.* at 37. Consequently, the ALJ assigned little weight to Dr. Thomas's opinion.

Plaintiff argues that the ALJ ignored the variable nature of fibromyalgia, but the record tells a different story. (Dkt. # 15 at 5.) The ALJ acknowledged fibromyalgia's mental component (AR at 25), considered the "brain fog and emotional component of fibromyalgia" (*id.* at 33), and recognized that "fibromyalgia symptoms ebb and flow" (*id.* at 35). These statements show that the ALJ properly considered the nature of fibromyalgia in his determination.

Plaintiff's claim that "Dr. Thomas did not state *all* of her opinions were based *solely* on [Plaintiff's] self-reports" is unpersuasive. (Dkt. # 15 at 5 (emphasis in original).) Dr. Thomas explicitly noted that her opined limitations were "all based on pt's best self-estimates." AR at 1477. Plaintiff also argues that the ALJ overlooked Dr. Thomas's other explanations regarding being off-task 25% of the time due to physical pain, ADHD, and PTSD, and her absenteeism history of missing days and being frequently late. (Dkt. # 15 at 5 (citing AR at 1478-79).) Still, these explanations do not provide supporting objective medical evidence or contravene Dr. Thomas's clear statement of reliance. Instead, they appear to reflect Plaintiff's own rationale for

ORDER - 4

the limitations. As a result, the ALJ reasonably found that Dr. Thomas's opinion mirrored Plaintiff's self-reported statements, which the ALJ properly discounted (as discussed below).

Finally, the ALJ's findings regarding supportability and consistency were not conclusory. Although Dr. Thomas referenced fibromyalgia symptoms such as pain, tender points, and muscle weakness, the ALJ highlighted that she did not provide any supporting clinical evidence. AR at 34-37 (citing *id.* at 1475 ("No objective scans/labs" to corroborate impairments)). The ALJ noted that Dr. Thomas's contemporary examination notes indicated formal testing had not been conducted in "many years" and observed only moderate findings consistent with Plaintiff's RFC. *Id.* (citing *id.* at 1278-79 (Plaintiff had full shoulder range of motion, could bend forward 90 degrees, squat 30-45 degrees, stand up independently, demonstrated normal hand strength, and showed no erythema, crepitus, or swelling at tender points)). The ALJ also pointed out that although Dr. Thomas's opinion involved mental functioning limitations, she neither defined low-stress work nor conducted any mental status exams. *Id.* Despite Plaintiff's symptom complaints, her overall physical exam findings were mostly unremarkable, with normal gait, motor strength, sensation, and range of motion generally observed. *Id.* (citing *e.g.*, *id.* at 765, 774, 984, 1035-36, 1263, 1521-23, 1637, 1661-63). Furthermore, although Plaintiff alleged severe fatigue, she participated in online yoga classes multiple times a week.[3] *Id.* (citing *id.* at 593, 597, 602, 612). Thus, comparing Dr. Thomas's opinion to her own treatment notes and the longitudinal record, the ALJ reasonably found Dr. Thomas's assessment unpersuasive.

---

[3] The Court observes that the ALJ consistently stated that Plaintiff taught online yoga classes; however, the record indicates that Plaintiff attended online yoga classes rather than teaching them. AR at 26-37; *but see id.* at 593, 597, 602, 612. Notably, Plaintiff did report teaching an online historical recreation class to 40 students. *Id.* at 593, 597. Although it appears that the ALJ conflated these two separate activities, this mischaracterization does not detract from the overall validity of the ALJ's analysis.

ORDER - 5

In sum, the Court finds that the ALJ properly considered Dr. Thomas's narrative support, reasonably reviewed the longitudinal record, and provided several reasons, supported by substantial evidence, for assigning minimal weight to Dr. Thomas's opinion.

      2.      Reginald Adkisson, Ph.D.

Plaintiff contends that the ALJ failed to fully account for all the moderate limitations described by Dr. Adkisson. (Dkt. # 15 at 7.) Dr. Adkisson opined that Plaintiff had moderate limitations in reasoning, understanding, memory, sustained concentration and persistence, social interaction, and adaptation. AR at 1026. The ALJ found Dr. Adkisson's opinion persuasive, as it was supported by a narrative report and clinical observations and was consistent with the longitudinal record. *Id.* at 35.

When an ALJ gives significant weight to a physician's opinion, the ALJ must either incorporate their findings into the RFC or explain why they were not accepted. *See Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013). This requirement does not mean the limitations need to be transcribed verbatim into the RFC; rather, the ALJ must adequately address these limitations in its formulation. *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ's formulated RFC included restrictions to simple, routine, repetitive tasks; work in a low-stress environment with only occasional decision-making and changes in setting; and no more than occasional interaction with the public and coworkers. AR at 28. Plaintiff has demonstrated no error in this assessment. Accordingly, the ALJ's RFC determination sufficiently incorporated Dr. Adkisson's opined moderate limitations concerning pace and other mental capabilities.

ORDER - 6

3.  *Other Medical Evidence*

In challenging the ALJ's evaluation of the medical evidence, Plaintiff summarizes various treatment notes and findings before suggesting they support her claims of disability. (Dkt. # 15 at 7-8.) That said, summarizing facts without providing analysis or legal argument is not enough to demonstrate harmful error. *See Putz v. Kijakazi*, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022). This is because bare assertions do not satisfy Plaintiff's requirement to present her contentions and reasons with specificity. *See Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007). The Court will not "manufacture arguments where none is presented." See *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

4.  *Prior Administrative Medical Findings*

Plaintiff further contends that the ALJ failed to include the administrative medical findings from Suzanne Castro, Psy.D., and Renee Eisenhauer, Ph.D., both of whom reported moderate mental functional limitations. (Dkt. # 15 at 8.) However, as discussed above, the ALJ's RFC assessment adequately incorporated moderate limitations related to pace and other mental abilities. Plaintiff argues that a reasonable ALJ "could have reached a different disability determination" (*id.*), but just because "the ALJ *could* have come to a different conclusion" does not mean that the ALJ erred. *Shaibi v. Berryhill*, 870 F.3d 874, 879-80 (9th Cir. 2017) (emphasis in original).

**B.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony**

Plaintiff asserts that the ALJ erred in evaluating her testimony by failing to properly consider the objective medical evidence, summarizing general findings without explaining how they contradicted her statements, and mischaracterizing her daily activities. (Dkt. # 15 at 8-15.)

ORDER - 7

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ need not believe every allegation, nor analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff's claim that the ALJ did not properly evaluate all of the medical evidence is unavailing. (Dkt. # 15 at 9.) As discussed above, the ALJ properly evaluated the medical opinion evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

As to Plaintiff's assertion that the ALJ summarized general findings without clarifying how they contradicted her testimony (dkt. # 15 at 9-10), the record tells a different story. Contrary to claims about being distracted due to worry and anxiety (AR at 81), the ALJ noted that Plaintiff's healthcare providers primarily documented intact or appropriate cognition, with few observations of significant distraction or cognitive slowness. *Id.* at 31-32 (citing *e.g.*, *id.* at 491, 499, 508-09, 514-15, 706, 1036). The ALJ also highlighted that even after Plaintiff stopped her ADHD medication due to increased heart rate concerns, there was no meaningful increase in distractibility. *Id.* at 32 (citing *id.* at 1627, 1661, 1663). Regarding Plaintiff's testimony about severe physical limitations (*id.* at 84-85), the ALJ found her physical examinations mostly normal, with normal findings for gait, muscle strength, and range of motion. *Id.* at 30-35 (citing *e.g.*, *id.* at 765, 774, 1036, 1263, 1661, 1663, 1637). The ALJ also noted that treating providers rarely documented any fibromyalgia tender points. *Id.* at 35. The ALJ appropriately relied on this objective medical evidence to discount Plaintiff's claims.

ORDER - 8

While Plaintiff argues that her daily activities were not inconsistent with her testimony (dkt. # 15 at 10), the ALJ pointed out that despite Plaintiff's assertions about social limitations (AR at 80, 1025), the record reflected that she was able to go out in public by herself, such as shopping in stores twice a month. *Id.* at 33 (citing *id.* at 81). She also attended comedy clubs with friends and maintained positive relationships with her children. *Id.* at 26-27, 32 (citing *e.g.*, *id.* at 1023, 1178, 1276, 1286). In contrast to her claims of severe limitations in sitting, standing, and walking, she could go camping, attend comedy shows, and participate in online yoga classes. *Id.* at 30-35 (citing *e.g.*, *id.* at 593, 597, 669, 674-75, 1108, 1110, 1178, 1276, 1286). Plaintiff also traveled to Sweden in 2019 and planned to seek part-time work upon her return. *Id.* at 30 (citing *id.* at 490, 498, 740, 744). The ALJ reasonably determined that these activities contradicted Plaintiff's claims.

An ALJ may rely on clear and convincing evidence, including discrepancies between daily activities and testimony, to discount symptom allegations. *See Farlow v. Kijakazi*, 53 F.4th 485, 489 (9th Cir. 2022). Plaintiff's general objections do not address the ALJ's specific findings or present evidence that undermines the ALJ's conclusions. Even if the evidence could be interpreted differently, the ALJ's interpretation remains reasonable and must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (affirming the ALJ's decision where daily activities allowed multiple rational interpretations).

Finally, Plaintiff summarizes portions of her testimony over several pages without forming an argument or establishing a logical connection between her testimony and any alleged errors made by the ALJ. (Dkt. # 15 at 10-15.) While she asserts that this summarized testimony is evidence that the ALJ improperly rejected (*id.* at 14), this argument falls short because it fails to address the ALJ's specific reasons for discounting that testimony. Although Plaintiff claims

that "a reasonable ALJ who properly evaluated and fully credited this evidence could have reached a different disability determination" (*id.* at 15), this does not establish that the ALJ erred in his decision-making. *See Shaibi*, 870 F.3d at 879-80.

In sum, the record reflects that the ALJ provided specific, rational, and cogent reasons for discounting Plaintiff's testimony. Plaintiff's conclusory disagreement with the ALJ's reasoning fails to establish harmful error. Even if the evidence is susceptible to multiple reasonable interpretations, the Court must uphold the ALJ's interpretation. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### C. The ALJ Did Not Err in Evaluating the Lay Witness Statements

Plaintiff argues that the ALJ erred by not evaluating the lay witness statements from her partner. (Dkt. # 15 at 15-17.) In contrast, the Commissioner asserts that under the new regulations governing the evaluation of medical evidence, ALJs are not required to provide reasons for rejecting lay witness statements. (Dkt. # 20 at 15-16.)

The Ninth Circuit has recently clarified that under the new regulations, "ALJs need not explain their reasons for discounting evidence from nonmedical sources, such as the claimant's friends and family." *Hudnall v. Dudek*, 2025 WL 729701, at *3 (9th Cir. Mar. 7, 2025); *see also In re Zermeno Gomez*, 868 F.3d 1048, 1052-53 (9th Cir. 2017) (emphasizing that published decisions are binding on lower courts in the circuit even before a mandate has issued).

In supplemental briefs ordered by the Court (*see* dkt. # 22), Plaintiff argues that *Hudnall* misquoted § 404.1520c(d), leading to a misunderstanding regarding the ALJs obligations concerning nonmedical evidence. (Dkt. # 23 at 3-6.) Plaintiff contends that the regulation aligns with existing precedent that requires ALJs to consider lay evidence. (*Id.*) Conversely, the Commissioner argues that Plaintiff's challenge to this binding precedent is inappropriate,

asserting that *Hudnall* remains controlling law. (Dkt. # 24 at 2-3.) The Commissioner further emphasizes that Plaintiff has not cited any agency authority mandating that ALJs articulate their consideration of nonmedical source statements, and while ALJs should consider lay evidence, the revised regulations do not require them to elaborate on their reasoning. (*Id.*)

In response, Plaintiff sought permission to file an additional supplemental brief (dkt. # 25), which the Court granted (dkt. # 26). In her reply, Plaintiff argues that Social Security Ruling ("SSR") 16-3p explicitly requires ALJs to articulate how they evaluate lay evidence. (Dkt. # 27.) In pertinent part, SSR 16-3p specifies that "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we *examine* the entire case record, including . . . statements and other information provided by . . . other persons." 82 Fed. Reg. No. 205, at 49464 (emphasis added). SSR 16-3p also states that the Agency "will *discuss* the factors pertinent to the evidence of record." *Id.* (emphasis added).

While SSR 16-3p explicitly requires ALJs to consider lay witness testimony, it indicates that ALJs are only required to articulate their analysis of lay witness testimony when it is relevant to the overall evidence in the record. Moreover, the requirement emphasizes that ALJs' reasoning must be clear enough for "any subsequent reviewer [to] assess how the adjudicator evaluated the individual's symptoms." 82 Fed. Reg. No. 205, at 49467. Thus, while there is a duty to consider lay witness testimony, the need to articulate the analysis depends on its relevance to the case at hand.

Consistent with the foregoing analysis, the Court notes that ALJs cannot dismiss significant, probative evidence without valid justification. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). This requirement ensures that the agency "set[s] forth the reasoning behind its decision in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806

ORDER - 11

F.3d 487, 492 (9th Cir. 2015). Although ALJs are not obligated to articulate their reasoning when discounting evidence from nonmedical sources, they must account for lay witness testimony if it is significant and probative. Therefore, when an ALJ chooses to reject such lay witness evidence, they must provide legitimate reasons for that decision.

In this case, the lay witness testimony from Plaintiff's partner does not introduce any materially new limitations beyond those already described by Plaintiff. *Compare* AR 331-38, 372-76 (partner's statements) *with id.* at 71-88 (Plaintiff's hearing testimony). Given that the ALJ offered legally sufficient reasons to discount Plaintiff's symptom testimony, any omission of specific discussion regarding the lay witness testimony was harmless. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

### D.     The ALJ Did Not Err in Evaluating RFC

Plaintiff argues the insufficiency of the ALJ's RFC assessment given the failure to include the limitations assessed by Dr. Thomas, Dr. Adkisson, herself, and her partner. (Dkt. # 15 at 17-18.) This argument fails to establish error because the ALJ properly evaluated this evidence, as discussed above. *See Stubbs-Danielson*, 539 F.3d at 1175-76.

Plaintiff also contends that the ALJ erred by determining that she was able to perform past relevant work as a mail clerk, arguing that "because this work was performed more than five years prior to the ALJ's decision, under the amended definition of past relevant work, this work is not past relevant work." (Dkt. # 15 at 18.) However, the effective date of the regulatory change was June 22, 2024 (*see* 89 Fed. Reg. 48,138 (June 5, 2024)), while the ALJ's decision was issued on June 12, 2023. AR at 40. Therefore, the prior version of the regulation applies. *See Bersie v. Colvin*, 2025 WL 219116, at *1 n.1 (9th Cir. Jan. 16, 2025) (unpublished) (a reviewing court

ORDER - 12

applies the version of the regulation in effect at the time of the ALJ's decision). As a result, the ALJ did not err in concluding that Plaintiff could perform her past relevant work as a mail clerk.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 28th day of March, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 13